Good morning, Your Honors. Jose Zaldan Zepeda, Deputy Attorney General for Defendants. I'd like to reserve five minutes for rebuttal, please. This case comes down to a simple, a simple issue of giving intent, giving effect to the clearly stated intent of Congress. In 1996, Congress passed the Prison Litigation Reform Act with an eye towards ending federal court oversight of state prison systems. Of particular relevance here, the PLRA put forth two specific requirements for motions to terminate such prospective relief. One, Congress said that prospective relief is terminable at the request of prison officials two years after such relief is entered, and that such relief is automatically stayed 30 days after the motion to terminate is filed. These provisions were necessary, Congress determined, because prison officials But that isn't quite accurate, is it? It doesn't say there's an automatic stay 30 days after it's the – after the motion is filed. I thought it was that if the court hasn't ruled. No, that's incorrect, Your Honor. The language of the statute is that there's an automatic stay that goes into effect 30 days after the motion is filed. And the district courts can postpone that automatic stay by a maximum of 60 days. And I can point to specific statutory provision if the Court would like. But the whole reason why Congress put this – these provisions is that it was concerned that prison officials were handcuffed in their efforts to terminate injunctive relief orders by judges who stonewall – and this is a direct quote – who stonewall and simply refuse for many months, or even years, to issue a ruling on a request for modification or termination. And in this long-running litigation, that's exactly – what the district court basically tried to do is it tried to do an end run around these specific provisions. The district court entered an order that said because prison officials are contemplating and intend to file a motion to terminate, before you can do that, you had to submit these additional requirements. You had to – Wait. This was how many years after the relief was in effect? The district court entered its order about 11 years ago. So basically, at this point – I don't mean that. Pardon? Eleven years after the order was in effect. Not 11 years ago. You entered the original order. Okay. Exactly. The original order for prospective relief. The order at issue here was issued earlier this year when prison officials indicated that they were investigating conditions and that they intended to move to terminate at some point. The district court said, well, before you can move to terminate, there's these other requirements that you have to fulfill. One, you had to disclose your expert subpoenas. And two, you had to disclose your expert reports four months before you actually moved to terminate. And this order conflicts with the plain language of the PLRA in two specific respects. One, the district court basically prevented prison officials from moving to terminate at any point two years after the relief was entered. And second, the district court basically tried to get around the automatic stay by adding three, four months to – before the motions filed in order to get around the concern that the prison – that the automatic stay would come into effect. I guess I'm not understanding why we're talking about the two years if it had been in effect 11. I missed the last part, Your Honor. I guess I'm not understanding why we keep referring to the two years when it had been in effect for 11 years. Well, what the prison litigation reform act does is it gives prison officials the ability to move to terminate at their – at whenever – whenever they want at two point – at two years after the motion is filed. As other courts – in this court in Gilmore and the Seventh Circuit, I believe, basically say is that Congress basically said prison officials can go ahead and decide that they can move to terminate at any point. Now, one of the things the plaintiffs have argued in their answering brief is that years have passed, more than two years have passed. And that is factually correct. But the prison litigation reform act doesn't say prison officials have to move after two years. It says you can move as a prison official, you can move to terminate these cases at any point two years when you think it's appropriate. In this case, what the district court said is despite those requirements, despite the fact that Congress said you can move to terminate at any point that you think it's appropriate after two years, you have to go through these additional hoops. You have to go ahead and up front get your experts, have your experts do whatever investigations need to do, do your assessment of whether you think it's appropriate, and then disclose your expert reports, and then disclose your expert identity to plaintiffs, and only then can you move to terminate. And this is against the precise terms of the Prison Litigation Reform Act. Now, one of the arguments that plaintiffs have raised in their answering brief is that the district court's order is really just a scheduling order is what they call it, and that the prison district courts have wide authority in managing their dockets. We're not talking about any general civil case where the district – where we're challenging the district court's authority to manage its docket or discovery or whatever the court might think it's appropriate. We're talking about specific types of cases where Congress said we think that there are these very important policy concerns in mind, specifically that prison conditions are taking up too much time in district court's dockets, and that because of comity systems. And to that end, Congress said because of that, we're going to go ahead and have specific requirements when prison officials move to terminate. Congress said, as I said earlier, prison officials may move to terminate at any point two years after the relief is entered, and that district courts have to rule promptly on these types of motions. And in order to encourage courts to rule promptly on these types of motions, we're going to enact an automatic stay of relief. And this is what the district court gets around. Never mind that we call it a scheduling order. Never mind that we call it a discovery order or whatever it might be. Because Congress has spoken to this precise issue, the district court had to give effect to that particular intent that Congress expressed. Besides interfering with prison officials' ability to move to terminate at any point two years have passed, the district court also, in effect, extended the automatic stay under the PLRA for a four-month period of time besides what's contemplated by the statute. The statute says that there's an automatic stay 30 days after a motion to terminate is filed, and that the district courts have authority to extend this for 60 days. And the legislative history makes clear that the whole purpose of this is so that provision in Miller v. French. What the district court did is, since it recognized that it couldn't extend the automatic stay besides for a 60-day period, it basically enacted a stay of that up front before the motion to terminate is filed. So it basically prevents the automatic stay from going into effect for a period of 120 days. And this also contravenes the intent of the statute and the intent of Congress in passing these types of cases. If there's any specific questions, I could go ahead and address them. Counsel, you've got — I know that there's been a number of discovery orders filed in the case. Now, the State hasn't appealed those orders, or at least those are not — have you appealed those orders? They're not before us today, is my understanding. Is that right? That is correct, Your Honor. There's been plenty of discovery that has taken place in this case regarding these particular issues that are not at issue. And has the State taken a separate — an appeal someplace else? Do you have an appeal pending before another panel here regarding those discovery questions? No, Your Honor. This is — And those discovery — those discovery — those discovery orders should go at least partway to satisfying the plaintiff's need for — to understand what the basis is for the State's pending motion whenever the State decides to file this, if it files it. That is correct, Your Honor. This is not one of those cases where there's any secret about what's going on in terms of the prison conditions at issue here. There's plenty of discovery that's taken place as a result of the district court's order that are not being challenged here, and that there's other discovery that goes on in the case generally. For example, plaintiffs conduct tours of prisons. Plaintiffs' experts have also undertaken tours. The Office of the Inspector General provides reports. The receiver provides regular reports about prison conditions. So there's no really any type of unfairness, even if that were a consideration under the statute, which I submit to the Court that there isn't because Congress said that it really isn't — that there's these specific provisions that should be observed in these types of cases. So there is discovery and there is plenty of opportunity for both parties to understand the conditions at issue. Right. And there are court-appointed experts that are going to report on the conditions in the prison? That is correct, Your Honor. And am I correct that what you have indicated is that you may file a termination motion after those experts report? Is that correct? That is correct, Your Honor. Prison official defendants stated that based on what the experts say, that defendants will then assess whether they will move to terminate at that point. And the district court then said give this 4-month notice and give the plaintiffs discovery on what all the reports are. That is correct. When defendant said that, then plaintiffs moved to reopen discovery, which the district granted and said, besides that, I'm going to go ahead and grant you this additional relief that no party has discussed or any party had a chance to brief, and that's what we're challenging because it's outside the intent and the language of the Prison Litigation Reform Act. Okay. And you haven't moved to terminate previously? In this case, no, we have not, Your Honor. And the case has been going on for a while and it's been up to the Supreme Court and back. This is the same case. Certain aspects of this case have gone up to the Supreme Court at a prison population issue. Right. That's correct. If the Court has any questions about the jurisdictional issue, plaintiffs have raised an argument that this Court lacks jurisdiction over this case, and we've explained in our briefs why that is incorrect, and the panel of this Court previously denied that motion and for the reasons restated. Denied it or did it give it to us? Denied it without prejudice. I think it denied it without prejudice to renewal in the answer in brief. Basically what it comes down to is this is a case where there was a consent decree that the court, the district court entered years ago, and under the caseload these are clearly appealable. There's other situations where this Court has addressed a previous appeal in the same case from the denial of a motion to terminate the receiver, and the caseload clearly establishes that such post-judgment type proceedings are appealable. I guess my question was what are all, is every post-judgment order appealable? No, Your Honor. There is caseload that says that there has to be a finality to that particular type of post-judgment order, that the district court must have issued an order that indicated that it was intended to be its final word in a particular issue. And in this case, there is that particular aspect where the district court has basically said this is my order and this is the way that I'm going to consider, if at all, motions to terminate, and so there isn't a finality issue, finality concern in this particular case. I also would like to point out that this Court, besides the previous appeal in this case and plot, had also addressed another appeal in another class action litigation called Armstrong that we cited in our brief where the plaintiffs moved to terminate or moved to dismiss for lack of jurisdiction, and this Court said that the district court's order was sufficiently final for it, for this Court to be able to assert jurisdiction over that case. If there's any more specific questions, I'd be more than happy to address them. Otherwise, I'll just go ahead and reserve the rest of my time. Thank you. Ms. Knapp. Good morning. My name is Kelly Knapp, and I represent the plaintiff appellees in this matter. You may need to speak up just a little bit. This case involves medical care in 33 prisons that the Supreme Court found was woefully inadequate and resulted in ongoing suffering and death for thousands of prisoners. The conditions could not be more grave. This Court does not have jurisdiction over an order that merely sets a schedule for a motion defendants may never file and have not filed in this 11-plus years. First, this is – there is no jurisdiction because this is only a case management order and not a final order. If defendants file a termination motion, there will be future proceedings that will provide opportunity for review. Second, this is a consummate example of a case management order that does not cause any harm or prejudice to defendants. Third, under Mohawk, granting jurisdiction in this appeal would open the floodgates to an entire class of case management orders that have necessarily been completed by the time of a final judgment. Those orders would include any number of scheduling orders and case management orders. Thus, in the interest of judicial economy and preserving the district court's inherent power to manage its own docket, this Court must avoid such an unprecedented expansion. Sotomayor, do you think that this order will be reviewable at some later time? If defendants file a termination motion, the merits of the termination will be reviewed. But it's true, like all case management orders that don't cause any harm or prejudice, which is true here, there is no harm or prejudice, it's completed. You can't review it at the time of a merits review. So your point is that this will never be reviewable effectively? And that that's of no consequence because there's no harm to it? No. My point is that it won't be reviewed because it will have been completed at the time of the termination motion. Yes, that's true. And if there were some sort of harm, if defendants could show harm, then they could bring a writ of mandamus, for example, which they have not done here. By issuing this scheduling order, the district court acted well within its authority to manage its docket under the powers vested by Rule 16. In this case, once defendants stated they might file a motion, the district court was faced with a complicated fact-finding procedure involving medical care for over 100,000 prisoners in 33 prisons and extensive evidence requiring expert analysis, as well as an automatic stay of numerous remedial orders ensuring the basic components of constitutionally adequate health care. It considered whether it was fundamentally unfair to allow defendants an unlimited amount of time to prepare their evidence, while plaintiffs in the district court would be constrained by the 90-day automatic time frame in reaching a fully discovered accurate and reliable decision. In the face of this dilemma, the district court properly set a schedule that would allow both parties an opportunity, a fair opportunity, to discover and prepare their evidence and prevent defendants from needlessly ambushing plaintiffs in the court with a termination motion. The scheduling order was necessary to protect the parties' due process rights. In Miller v. French, the Supreme Court expressly left open the question of whether the automatic stay provision violates due process in a massively complex case such as this one. Here, the district court avoided the need to invalidate the provision by developing a solution that protects the rights of all parties while avoiding any due process violations. I'd like to go back and talk a little bit about jurisdiction and address some of the defendant's points, I think. First of all, let me correct myself and say that this case management order would be reviewable upon review of the merits to determine whether it did harm prejudice at the time and harm defendants in somehow reaching their decision. What's the remedy at that point? You can reverse. Reverse what? Reverse the decision on the merits of the termination motion. You can find that because of the scheduling order, it somehow caused some sort of harm. That doesn't make any sense. I think it would be a waste of our time to do that. It would be a waste of your time to review it? Well, we have a schedule set out by Congress. It does seem that Congress wanted some deadlines followed, and it doesn't seem a waste of our time to determine here whether that schedule has to be followed or not. And it's effectively unreviewable if we had to consider it with the merits. At that point, I don't really care. I don't think I'm likely to care if I were on that panel as to whether there was, you know, a 120-day delay in filing the motion that led to what's going to be a massive decision one way or the other by the district court. Well, I think that's the point. If there is no harm and there is no prejudice from this simple case management order, I'm not sure that the appellate court should care. That's what I understood was your prior point, was there's no harm, no foul here. Right.  Exactly. Defendants raise two cases to support their jurisdictional argument. The first that they – one of the cases that they raise is Armstrong v. Davis. Armstrong held that that post-judgment order, which was an injunction, that there was jurisdiction to review that. That's because the logic behind that was because it was an injunction that ordered the state to implement some relief, and there was no further opportunity for review of that injunction. That's not the case here – or it's not analogous to the case management order here that doesn't cause any harm to the defendants. Defendants also raised Plata, or an earlier appeal in this case. That case, there were two issues. One, whether the appointment of the receiver was a violation of the PLRA. There is a specific section, 1292a2, that it gives this court jurisdiction over motions or appointments of a receiver. The case was also about a construction plan that the receiver had put forth and that the district court refused to invalidate. The court determined that there was jurisdiction on that piece alone because the construction plan was – or, sorry, the court – excuse me, the district court determined that there was not jurisdiction over the construction plan because it was not final. It was – there was – and there would be further opportunity for review of that construction plan. The challenge was premature. So Plata – the earlier appeal in this case provides no support for defendants and actually supports why this court should rule there is no jurisdiction. One of the questions or points that seemed to be raised was that the plaintiff's needs would be met by the discovery order and the inferences that we didn't – that the plaintiffs didn't need that extra four months. First of all, at the time of the scheduling order, the court didn't anticipate that it would be eight months before – and defendants still had not filed their motion or disclosed their expert reports. Defendants were indicating, well, they were sending the court mixed messages, but they certainly had said that they may file a termination motion. And the court, using its inherent case management powers that had not been abrogated by the PLRA, set a schedule that would reasonably protect both parties' rights. Further, the only reason that plaintiffs had had an opportunity to have their experts go into the prison tours is because it's been eight months. It's been all of this time, and defendants have yet to file their motion. But also, plaintiffs can't – plaintiffs need to see what their contentions are, what the plaintiffs' or the defendants' contentions are. We don't know what the foundation of their motion to terminate will be. We don't know what the basis of the expert opinions will be. And this discovery order, this 120-day order, gives plaintiffs the opportunity to discover the facts that support the basis of the experts' conclusions. Plaintiffs need that time to be able to – and the court needs that so that the court can reach an accurate and well-informed and fully discovered decision before relief to stay that suspends or that protects the lives of thousands of prisoners. Breyer. Counsel, we don't – we don't see these kinds of deadlines very frequently. Can you think of any other case in which Congress has set out deadlines like this, some kind of a schedule set forth in the statute, and where we or another court has said you can avoid that schedule? Again, I can't think of very many statutes in which we have this kind of schedule set out. I can't either. But what I would like to say is that this triggering point for the automatic stay is once the motion is filed. The motion has not been filed. And there is – defendants talk a lot about congressional intent. There is no reason to reach congressional intent, because the language of the PLRA is clear. There is no ambiguity. To usurp the district court's basic function of case management, you need some sort of clear mandate. Well, I know – I'm not sure I understand. Are you conceding that there's going to be an automatic stay at some point in this case? Because my understanding was that the stay is intended to get the district court to rule in the district, so that the – and so stay goes into effect if the district court hasn't ruled on a motion within a certain time. That's correct. And that period is 30 days, which in a complex case like this is sort of – you're anticipating it's unlikely the district court is going to respond within 30 days. That's correct. There is – that's correct. I think the timeframe set forth is unrealistic for a complicated case like this one. But there can be extensions to 90. That's correct. And that – the district court's job of deciding the case would be eased if there  Correct. In a complicated case like this, it would be nearly impossible to fully discover the facts and have any evidence without this. So are you contending that the schedule set out in the statute is unconstitutional as a violation of the due process clause? We don't have to – well, Miller v. French expressly let that question open. We don't have to reach that question because the district court set a schedule that would avoid invalidating PLRA. Right. But we now have the question as to whether the district court properly did that. If we were to determine that the district court doesn't have the authority to do that as a statutory matter, must he do that by virtue of the due process clause? Yes. Okay. So is the statute unconstitutional on its face? No, it's unconstitutional as applied to the court. Well, then how can it be unconstitutional as applied since you haven't seen the State's motion yet? If the State came in and said, we want the State dissolved because we're really, really busy in Sacramento, it would be so silly and so trivial that it wouldn't take you more than about three pages to explain it and you wouldn't need any affidavits from experts or any evidence, would you? So we couldn't say that the statute would be unconstitutional on its face in such a trivial case. No, and that's not the case here. You're anticipating that's not what the State is going to do. But it's very difficult to make an as-applied argument when we don't have the motion in front of us. Yes, exactly, which highlights why there shouldn't be jurisdiction. I'm confused. Has there been a – was there an argument before the district court as to whether or not the statute was unconstitutional? No. No. Then that issue wasn't before us. No. And the reason it's not before us is because the district court acted within its power to set a schedule that protected the due process rights and avoided the need to reach the question under the doctrine of constitutional avoidance. Did you ask the district court to do that for this 120 days, or was that something that the district court did on its own? No. We asked for discovery. For the 120 days? Not specifically for the 120 days. We asked for expert discovery. Before the State filed its motion? Is that what you were asking for? Well, the State hasn't filed a motion. I understand that. Okay. But you – did you go to the district court and say, before the State can file this motion, we need to have discovery? Yes. I mean, what happened was the plaintiffs or the defendants came to – the defendants opposed our – we learned that the defendants were starting to conduct discovery, that they had hired experts and they were going to the prisons. And we asked for discovery to be allowed to prepare at the same time as defendants. And during those proceedings, the district court set this schedule. And is the district court's schedule – was that – did the district court sort of come up with that on its own, the idea of delaying the State by – requiring the State to give 120 days' notice before it files its motion? The district court, who knows the facts of this case and how complicated it is and all of the interests involved and the risk of harm if relief is inappropriately or prematurely stayed, set a reasonable schedule. Yes. My understanding is that the three-judge court told the State that it should indicate whether it intends to file a motion to terminate. And then the State said that if the court-appointed experts don't come through here, that we'll file – we may file a – we may file a motion in a few months, something like that. It was like last February. And at that point, you moved to reopen discovery. Is that correct? Correct. And that's not at issue here, the reopening of discovery, which – No. And then in conjunction with that, the district court set a schedule for the disclosures and when the – so the termination motion would be filed after that? Correct. Okay. Okay. And you think that's all perfectly reasonable, I take it? Absolutely, based on the facts of this case and based on the inherent powers of the district court. And what is the –  Yeah. Please, go ahead. But what is your response to the State's argument that there's supposed to be a stay and you are – this is delaying it? Our response is the only reason that there's a delay in this case is because defendants haven't disclosed their experts or filed their motions. They haven't moved to terminate in the last 11 years and they've been noncompliant with the court's dozens of remedial orders. Defendants have only themselves to blame for any delays in this case. If they were so eager to end this case, then they would take the action necessary so that the case could be ended. And that action would be what? They can disclose their experts. Their experts have been touring the prison since at least January. They haven't disclosed their experts. They haven't filed their expert reports. Are they under court order to do that? No. But if they were so eager to end this case and if this were causing any harm or any prejudice, then they would have done so. Unless there's any further questions, I submit. Okay. Thank you. Thank you. I just wanted to make a few brief points. First, one thing that Plaintiff's counsel didn't say is that they haven't had an opportunity to conduct any type of discovery or know what their conditions are in prisons. So I think that's fairly well established by the record. What Plaintiff's counsel did say is that Plaintiffs want to know what defendants' arguments will be in the motion to terminate. And of course, any party wants to know what the other party wants in any type of proceeding. But Congress said, in these motions to terminate, this is the way this is going to take place. And Congress had a lot of hearings about prison conditions cases and about how district courts were delaying. And Congress said, we think it's really important that district courts handle this this particular way. Congress made a policy decision and Congress said this is the way it should be handled. And the district court's role in that particular scheme was to go ahead and give effect to the intent of Congress. Kennedy, did you bring that to the attention of the lower court? No, Your Honor. We didn't have an opportunity to, because nobody ever even brought up this particular request for defendants to disclose their experts beforehand. So it just came from the judge. Now, that's what I asked earlier. It just came. Exactly. It just came out. Exactly. It was classified. I'm not understanding. What is it that just came out that you didn't have a chance to make? The district court's order directing defendants to disclose their experts and their expert reports four months before they moved to terminate. That was something that plaintiffs didn't ask for. Defendants didn't have a chance to respond to. The hearing, the transcript of the hearing is before the court in the excerpt of the record. There was no discussion about these additional requirements. The district court issued an order and said plaintiffs' request to reopen discovery is granted. And by the way, I'm going to go ahead and force defendants to go ahead and disclose their experts and their expert reports. Well, what were they going to have discovery of? What they were asking for is to reopen discovery, just presumably a request for production of documents, depositions and that sort of thing. No reports? Exactly. Because that's not really contemplated under the Prison Litigation Reform Act. And obviously, the record indicates that plaintiffs didn't indicate that they needed them because they didn't request them to the district court before the district court issued this order. So in terms of the challenge, the due process challenge, as Judge Bidey, as you pointed out, this would have to be an as-applied challenge and there is no record about any potential unfairness about this automatic stay. And in our reply brief, we pointed to the court to a case law that consistently says that there is no vested due process rights in these types of cases and therefore there is no due process claim as a matter of law. If any such challenge would be premature at this point, if at some point when defendants move to terminate under the PLRA rather than under the order the district court entered, then defendant, the plaintiffs can go ahead and make their arguments that somehow the automatic stay is preventing them from presenting their case and then there would be an appropriate record for this court to rule on it at that point. But no court, what it really comes down to is no court has struck down the PLRA, the automatic stay provision as unconstitutional. What is your understanding, the State's understanding of the scope of the district court's order? If you decide to file a motion to terminate, clear it through the Attorney General and the Governor, whoever else has to sign off on that, what do you have to disclose and when? We have to disclose. Basically what has to happen is once defendants make that decision to move to terminate, at that point they cannot move to terminate. What they have to do at that point is they have to disclose their experts and disclose their expert reports to plaintiffs. And at that point, then they can't move to terminate. When you say disclose their experts, does that mean all the experts that the State has ever consulted with or does it mean the experts on whom you intend to rely? The latter part, Your Honor, the experts on which defendants intend to rely. But you're going to rely on your motion. So you give notice that you're – it says that you have to give notice that you're going to file a motion and then provide the reports that you're going to rely on. But you don't have to. But it's a matter of providing the discovery on which you intend to base your motion, not, for example, a statement of issues. That is correct. When defendants are ready to terminate, they have to go ahead and just disclose their reports and their expert identities. And then four months later, they can just go ahead and move to terminate under PLRA. And that's exactly the way, the reason why that gets around. It's an attempt to get around the PLRA. And the time for the district court to rule begins to run. Precisely, Your Honor. And the whole scheme that Congress enacted with the automatic stay and the requirement that the court, the district court rule promptly, that's when it comes into effect. So the district court basically said, I know these requirements are coming up the line. I'm just going to go ahead and enter for practical purposes. What it is, is it's additional requirements before you even move to terminate. And that's why it's contrary to the PLRA and what Congress intended. In terms of, Judge Bidey, you asked whether there's any other statute where there are similar statutory requirements for a court to rule really quickly. There's the Crime Victim Rights Act where Congress said that this court has to enter orders on mandamus petitions. And I think the deadline there is 30 days. And I know that there's subsequent hearings in Congress after that because a lot of courts were not doing that. And Congress made it clear that when it enacted that time limitation that it was pretty serious about it. And what it really comes down to is Ms. Knapp said something that this Court shouldn't care about this because this is a scheduling order. But I submit to the Court that the Court should care because Congress cared. Congress cared enough to say, these motions to terminate are really important to us. Prison condition cases are something that courts should not be involved in. And we think that courts should be able to rule in these cases promptly and that we should stay the relief if it's not dealt with in an expeditious manner. I'm going to read a quick quote from Congress attempt to amend the PLRA in 1997. Quote, courts have been avoiding the automatic stay by saying that it is impossible to comply with because it sets up an impossible timetable. The argument that the court is being forced to rule on anything on an unrealistic timetable is incorrect because the automatic stay imposes no requirement that they rule. It only provides that if they do not rule, there is no order in effect until they do so. And what this really shows is Congress knew that these are complicated cases. Congress knew what district courts were up against. But Congress said, we think this is really important. We think this has a policy reason. This is what we're going to do. I see my time is up and I just wanted to go ahead and have a chance to finish. And it's statutory interpretation. The key rule is you give effect to the intent of Congress. And if courts don't do that, then basically it usurps the power of Congress to pass statutes. Thank you, Your Honors. And we also have the Speedy Trial Act that says we have to. Thank you, Your Honor. I forgot about that. I can't forget about it. I'm a district court judge. As a district judge, I know you're up against these deadlines all the time. Thank you, Your Honor. And we thank both counsel for the argument, a very interesting and provocative and obviously very important case. With that, we've completed the oral argument calendar and the Court stands in recess. All rise. This court is in recess until the next hearing. Thank you.
judges: Beistline, Schroeder, Bybee